1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5          **SAN JOSE DIVISION**

6

7    PINNACLE VENTURES LLC;                     Case No. 18-cv-03412-BLF
     PINNACLE VENTURES DEBT FUND III,
8    L.P.; and PINNACLE IV, L.P.,

9                    Plaintiffs,                **ORDER DENYING MOTION TO
                                                DISMISS FIRST AMENDED
10              v.                              COMPLAINT**

                                                [Re: ECF 66]
11   BERTELSMANN EDUCATION
     SERVICES LLC,                              **[REDACTED PUBLIC VERSION]**
12
                    Defendant.
13

14          This action arises from a dispute between investors in third party HotChalk, Inc.

15   ("HotChalk"), a privately held corporation that provides education technology and services.

16   Plaintiffs are Pinnacle Ventures LLC, a private venture capital firm that provides debt and equity

17   financing to early stage companies, and two of its funds, Pinnacle Ventures Debt Fund III, L.P.

18   and Pinnacle IV, L.P. (collectively, "Pinnacle"). Pinnacle provided debt financing to HotChalk

19   beginning in 2014 and received warrants to purchase HotChalk stock. Defendant Bertelsmann

20   Education Services LLC ("BES") provided additional financing in 2015 and 2018. Pinnacle

21   alleges that BES took effective control of HotChalk in 2015 and used fraudulent and unlawful

22   means to deprive Pinnacle of the value of its investments, first by preventing Pinnacle from

23   participating in the 2015 financing round and then by diluting the value of Pinnacle's warrants in

24   the 2018 transaction. Plaintiff sues BES for fraud and related state law claims.

25          BES has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking

26   dismissal of Claims 1-5 of the first amended complaint ("FAC") *only* to the extent those claims

27   are based on the 2015 transaction. Pinnacle argues that because Claims 1-5 are based on BES's

28   conduct in both 2015 and 2018, BES in essence seeks partial dismissal of each claim. Pinnacle

1  contends that Rule 12(b)(6) does not provide a mechanism for dismissing part of a claim, and that

2  in any event the FAC's allegations regarding BES's 2015 conduct are adequate to state a claim.

3  The Court has considered the briefing and the arguments presented at the hearing on August 1,

4  2019.  For the reasons discussed below, the motion to dismiss is DENIED.

5  **I.      BACKGROUND[1]**

6        Pinnacle was introduced to HotChalk in 2014.  FAC ¶ 22, ECF 59-4.  HotChalk was an

7  established start-up expected to generate nearly $███████ in revenue in 2014.  *Id.* ███████

8  ████████████████████████████████████████████████  *Id.*

9        *Pinnacle Transactions*

10       Pinnacle and HotChalk entered into two Loan and Security Agreements in 2014 and early

11 2015, under which Pinnacle provided debt financing totaling $███████.  FAC ¶¶ 23, 25, 27.

12 As part of those transactions, Pinnacle obtained warrants giving it the right to purchase more than

13 two million shares of HotChalk at an exercise price of $████.  FAC ¶¶ 24, 26.

14       *2015 BES Transaction*

15       On August 5, 2015, HotChalk circulated term sheets for an equity deal with BES, a

16 division of a large German conglomerate.  FAC ¶ 29.  The deal had three primary components:

17 (1) HotChalk would acquire Synergis, a BES subsidiary, through merger; (2) BES would make an

18 $███████ equity investment in HotChalk; and (3) BES would make a $███████ secondary

19 purchase of shares from existing HotChalk shareholders to bring its post-acquisition, post-

20 investment stake in HotChalk to a total of ███.  FAC ¶ 29.  Because HotChalk's share price had

21 increased substantially since Pinnacle obtained its HotChalk warrants, Pinnacle stood to make

22 millions of dollars by selling the HotChalk shares underlying its warrants.  FAC ¶ 30.

23       "[O]n or around August 5, 2015, HotChalk's CFO Toth informed a Pinnacle principal that

24 Pinnacle would be able to sell 'up to 100%' of its warrants to BES."  FAC 32.  "On August 13,

25

26

27

28

---

[1] The background facts are drawn from the allegations of the complaint, which are accepted as true for purposes of the motion to dismiss, *see Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011), and from documents incorporated into the complaint by reference and matters subject to judicial notice, *see Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

United States District Court
Northern District of California

1    2015, Toth again confirmed that Pinnacle could sell all of its warrants to BES and that Pinnacle

2    could do so 'without too much fuss,' including without first taking the technical step of formally

3    exercising the warrants to purchase the underlying shares before selling them." *Id*. Mr. Toth's

4    statements "could only have come on authority of BES given that it was BES that would be

5    purchasing the warrants." FAC ¶ 33. Because Pinnacle understood that its ability to sell 100% of

6    its warrants as part of BES's direct purchase of HotChalk shares was secure, Pinnacle did not

7    consider any other opportunities that might have been available with respect to its warrants. *Id*.

8          On Friday, October 16, 2015, "Toth called a Pinnacle principal to inform Pinnacle that it

9    would not be able to sell its warrants (or the underlying shares) to BES *at all*, as Pinnacle had been

10    promised it could do." FAC ¶ 34. Mr. Toth's statement "could only have come at the direction of

11    BES – the purchaser of HotChalk shares in the transaction." *Id*. On Monday, October 19, 2015,

12    Pinnacle emailed HotChalk's CEO to express both disappointment and hope that a solution could

13    be found. FAC ¶ 35. Nothing came of that email, and BES's November 9, 2015 Offer to

14    Purchase required that sellers in the tender offer own HotChalk shares as of October 20, 2015.

15    FAC ¶ 36. The Offer to Purchase precluded sale of warrants in lieu of the underlying shares. *Id*.

16    Pinnacle had not been informed that it needed to exercise its warrants by October 20, 2015 to sell

17    to BES in the tender offer. *Id*. Pinnacle therefore was unable to participate in "even the

18    economically inferior, prorated tender offer portion of the transaction."[2] *Id*. BES instead acquired

19    HotChalk shares from other large holders, ending up owning approximately ▮ of HotChalk's

20    equity and taking effective control of HotChalk. FAC ¶¶ 37-40.

21       *2018 BES Transaction*

22          Once it had control of HotChalk, BES changed the company's business strategy. FAC ¶

23    41. Instead of pursuing strong revenue growth, HotChalk focused on aggressive cost reduction.

24    *Id*. When Pinnacle expressed concern, BES assured Pinnacle that HotChalk's valuation in the

25    next financing round would be higher than in the last financing round. FAC ¶ 42. In reliance on

---

[2] Pinnacle's counsel explained at the hearing that because BES wished to purchase a set amount of HotChalk shares, BES would purchase shares from all participating shareholders on a pro rata basis if the tender offer was oversubscribed.

3

1    BES's representations, Pinnacle consented to allow HotChalk to restructure its debt multiple times

2    and amended its own loan agreements to extend the period in which HotChalk had to make

3    payments. FAC ¶ 43. Pinnacle also agreed to fund an additional $███████ loan tranche for the

4    benefit of HotChalk and its controlling shareholder, BES. FAC ¶ 44.

5          Meanwhile, BES deliberately dragged its feet on obtaining additional necessary financing,

6    putting HotChalk in a precarious position. FAC ¶ 46. BES thereafter was able to force a

7    financing transaction which benefitted BES at the expense of Pinnacle and other stakeholders in

8    HotChalk. FAC ¶¶ 47-48. In January 2018, Pinnacle received a term sheet for a new transaction

9    that would increase BES's equity interest in HotChalk from ████████████████ FAC ¶ 49.

10   At the same time, Pinnacle's warrants were converted on a ███████ basis, meaning that one share

11   of HotChalk became ███████ of a share. FAC ¶ 50. Pinnacle's stake in HotChalk thus was

12   rendered virtually valueless. FAC ¶ 55.

13         *Pinnacle's Claims Against BES*

14         Pinnacle filed this action in the Santa Clara County Superior Court on June 5, 2018.

15   Notice of Removal Exh. A, ECF 1. BES removed the action to federal district court on the basis

16   of diversity jurisdiction and filed a motion to dismiss pursuant to Rule 12(b)(6). Motion to

17   Dismiss, ECF 22. The Court granted the motion in part and denied it in part, with leave to amend.

18   Order, ECF 52. Pinnacle filed the operative FAC on February 11, 2019, asserting claims for:

19   (1) fraud; (2) negligent misrepresentation; (3) intentional interference with prospective economic

20   advantage; (4) negligent interference with prospective economic advantage; (5) unfair business

21   practices in violation of California Business & Professions Code § 17200 et seq.; and (6) unjust

22   enrichment. FAC, ECF 60.

23         BES moves to dismiss Claims 1-5, but "only challenges the allegations concerning the

24   2015 transaction." Def.'s Motion at 5 n.3, ECF 65-4. Pinnacle opposes the motion.

25   **II.    LEGAL STANDARD**

26         "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

27   claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force*

28   *v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted).

4

1    While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

2    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

3    556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

4    claim is facially plausible when it "allows the court to draw the reasonable inference that the

5    defendant is liable for the misconduct alleged."  *Id.*

6    **III.    DISCUSSION**

7          BES asserts that Claims 1-5 are based in part on alleged misrepresentations made in

8    connection with the 2015 transaction, but that Pinnacle has failed to allege that it reasonably and

9    detrimentally relied on any such misrepresentations.  As an initial matter, BES contends that

10   Pinnacle's current allegations are inconsistent with the allegations in their original complaint, and

11   should be disregarded on that basis.  Even if the current allegations are credited, BES asserts, they

12   are insufficient to plead reasonable and detrimental reliance.  In opposition, Pinnacle argues that

13   BES's motion is procedurally improper, as it seeks dismissal of only parts of Claims 1-5.  Pinnacle

14   also asserts that the allegations of the FAC do not contradict those of the original complaint, and

15   that even if they do, such contradiction does not provide grounds for dismissal.  Finally, Pinnacle

16   contends that it has pled reasonable and detrimental reliance.

17         **A.    Motion for Partial Dismissal of Claims**

18         The Court begins by addressing Pinnacle's assertion that the motion for partial dismissal of

19   Claims 1-5 is procedurally improper.  There does not appear to be a Ninth Circuit case on point.

20   However, several district courts within the Ninth Circuit have found that "[b]y its own terms, there

21   does not appear to be any way to grant partial dismissal of a claim under Fed. R. Civ. P. 12(b)(6)."

22   *In re Netopia, Inc., Sec. Litig.*, No. C-04-03364 RMW, 2005 WL 3445631, at \*3 (N.D. Cal. Dec.

23   15, 2005); *see also Redwind v. W. Union, LLC*, No. 3:18-CV-02094-SB, 2019 WL 3069864, at \*4

24   (D. Or. June 21, 2019), report and recommendation adopted, No. 3:18-CV-2094-SB, 2019 WL

25   3069841 (D. Or. July 12, 2019) ("Although Rule 12(b)(6) is the proper procedural mechanism to

26   dismiss part of a complaint, many courts have recognized that a party may not use Rule 12(b)(6)

27   to dismiss only part of a claim."); *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-CV-03753-SK,

28   2018 WL 4859978, at \*2 (N.D. Cal. Apr. 24, 2018) ("Defendants have not pointed to any

1    authority demonstrating that it may attack portions of a single claim on a motion to dismiss.").

2          BES has not cited any authority permitting a motion for partial dismissal of claims under

3    Rule 12(b)(6).  BES argues in its reply brief that granting its motion would narrow the issues for

4    trial.  Def.'s Reply at 10, ECF 71.  However, neither of the cases cited by BES addresses the

5    question raised by Pinnacle, whether Rule 12(b)(6) permits dismissal of part of a claim.  In *Susilo*

6    *v. Wells Fargo Bank, N.A.*, No. CV 11-1814 CAS PJWX, 2012 WL 5179531, at \*2 (C.D. Cal. Oct.

7    16, 2012), the court held that the plaintiff had not shown good cause for leave to amend to add

8    new claims or parties.  In *Rambus Inc. v. Samsung Elecs. Co.*, No. C-05-02298 RMW, 2008 WL

9    3875397, at \*3 (N.D. Cal. Aug. 18, 2008), the district court cited the text of Rule 56 expressly

10   allowing a party to move for summary judgment of part of a claim.  Rule 12(b)(6) does not contain

11   similar language, and neither case applies here.

12         This Court is inclined to follow those decisions holding that Rule 12(b)(6) may not be used

13   to seek partial dismissal of a claim.  The Court need not determine the scope of Rule 12(b)(6) at

14   this time, however, because BES's motion is subject to denial on other grounds as discussed

15   below.

16         **B.       Inconsistencies between Complaint and FAC**

17         BES argues that Pinnacle's current allegations regarding Mr. Toth's statements and the

18   2015 transaction should be disregarded as contradictory to allegations in original complaint.  In

19   particular, BES asserts that while the original complaint alleged that Mr. Toth said Pinnacle could

20   sell in the tender offer transaction without exercising its warrants, the FAC alleges that Mr. Toth

21   said Pinnacle could sell up to 100% of its warrants directly to BES outside of the tender offer

22   transaction.  *Compare* Compl. ¶¶ 33-34 *with* FAC ¶¶ 32-33.  BES argues that Pinnacle has

23   fundamentally altered its story, and that the Court should simply disregard Pinnacle's new

24   allegations that are inconsistent with its original allegations.

25         As Pinnacle points out, the Ninth Circuit has made clear that "there is nothing in the

26   Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make

27   inconsistent or even contradictory allegations."  *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d

28   856, 860 (9th Cir. 2007).  Consequently, even if the allegations of the complaint and FAC are as

1    contradictory as argued by BES, they do not provide grounds for dismissal under Rule 12(b)(6).

2    *See id.* If BES believes that Pinnacle has pled in bad faith, it can seek other means of redress, such

3    as sanctions. *Id*.

4         BES makes an alternative argument that the FAC's allegations regarding the 2015

5    transaction simply are not plausible when viewed against the backdrop of the original complaint.

6    BES cites several district court cases holding that inconsistencies between successive pleadings

7    may be considered when assessing the plausibility of the claims. *See Fasugbe v. Willms*, No. CIV.

8    2:10-2320 WBS, 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011) ("[T]he court need not ignore

9    the prior allegations in determining the plausibility of the current pleadings."); *Stanislaus Food*

10   *Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1076 (E.D. Cal. 2011) ("[Plaintiff

11   permissibly may alter the challenged conduct in an amended complaint, but the Court finds that in

12   light of the prior allegations, the plaintiff must allege more factual support. . . ."); *McKenna v.*

13   *WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015)

14   ("[W]hen evaluating an amended complaint, the court may also consider the prior allegations as

15   part of its context-specific inquiry based on its judicial experience and common sense to assess

16   whether" an amended complaint plausibly suggests an entitlement to relief." (internal quotation

17   marks, citations, and alterations omitted)).

18        As to the plausibility standard itself, BES cites the Ninth Circuit's decisions in *Eclectic*

19   *Properties* and *In re Century Aluminum* for the proposition that where the alleged facts are equally

20   consistent with conduct giving rise to liability and with benign conduct, the plaintiff must allege

21   additional facts tending to exclude the possibility that the benign explanation is true. *See Eclectic*

22   *Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("When

23   considering plausibility, courts must also consider an obvious alternative explanation for

24   defendant's behavior." (internal quotation marks and citation omitted)); *In re Century Aluminum*

25   *Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations,

26   only one of which can be true and only one of which results in liability, plaintiffs cannot offer

27   allegations that are merely consistent with their favored explanation but are also consistent with

28   the alternative explanation." (internal quotation marks and citation omitted)).  BES contends that,

7

1    applying these standards, Plaintiffs' claims based on the 2015 transaction should be dismissed as

2    implausible.

3         Even considering the discrepancies between the original complaint and the FAC, the Court

4    does not agree with BES that Pinnacle's theory of liability is implausible under the applicable

5    pleading standards.  While some details have changed between the two iterations of Pinnacle's

6    complaint, the overall narrative regarding the 2015 transaction has not.  *Compare* Compl. ¶¶ 32-37

7    *with* FAC ¶¶ 31-36.  Pinnacle consistently has alleged that Mr. Toth, speaking for BES, told

8    Pinnacle that it could sell up to 100% of its warrants in the 2015 transaction without exercising

9    them to buy shares first.  *See* Compl. ¶ 33; FAC ¶ 32.  The original complaint was vague as to the

10   type of transaction in which Pinnacle would be able to sell up to 100% of its warrants.  The Court,

11   like BES, read the original complaint to allege that Pinnacle was told it could sell its warrants in

12   the prorated tender offer, which is different from the current allegation that Pinnacle was told it

13   could sell its warrants to BES directly outside of the prorated tender offer.  However, that

14   discrepancy, and the others highlighted by BES, could be attributable to miscommunication

15   between client and counsel, lack of precision in drafting, or other reasons that do not undermine

16   the current allegations of the FAC.

17        BES argues that "[i]t is simply not plausible that BES would want to buy warrants from

18   Pinnacle, which would merely give BES the right to buy stock, instead of stock itself," and it

19   urges the Court to find that "the allegations in Pinnacle's Amended Complaint are equally

20   consistent with the notion that BES had no idea what HotChalk was saying to its shareholders and

21   warrantholders about their ability to participate in the transaction and never agreed to buy

22   Pinnacle's warrants at all."  Def.'s Motion at 10, ECF 65-4.  The Court cannot determine that BES

23   would not have been amenable to purchasing Pinnacle's warrants or that Mr. Toth was not

24   speaking for BES when it communicated to Pinnacle, because Pinnacle has alleged exactly the

25   opposite in its FAC.  In essence, BES is asking the Court to accept its version of events in place of

26   the version pled in the FAC.  Doing so would go beyond the plausibility inquiry mandated by the

27   Supreme Court and the Ninth Circuit in the authorities cited above.

28

8

**C.      Sufficiency of Pinnacle's Allegations of Reasonable and Detrimental Reliance**

BES's final argument is that Pinnacle has failed to allege reasonable and detrimental reliance on Mr. Toth's statements in connection with the 2015 transaction with the specificity required under Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Reasonable and detrimental reliance must be alleged for Pinnacle to succeed on its claims for fraud (Claim 1), negligent misrepresentation (Claim 2), intentional interference with prospective economic advantage (Claim 3), negligent interference with prospective economic advantage (Claim 4), and unfair business practices (Claim 5). *See Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2012 WL 4009503, at *5 (N.D. Cal. Sept. 12, 2012) (dismissing fraud claim where plaintiff "fail[ed] to adequately allege detrimental reliance, an essential element in pleading a fraud claim"); *Grant v. Pensco Tr. Co., LLC*, No. 12-CV-06084-WHO, 2013 WL 4772673, at *8 (N.D. Cal. Sept. 3, 2013) (dismissing negligent misrepresentation claim where plaintiff "has not adequately pleaded . . . reasonable reliance"); *BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, No. C10-1053, 2010 WL 3853025, at *3-4 (N.D. Cal. Sept. 29, 2010) (dismissing claim for intentional interference with prospective economic advantage where plaintiff relied on fraud as independently wrongful act but failed to plead fraud with specificity); *Ixchel Pharma, LLC v. Biogen Inc.*, No. 2:17–00715 WBS EFB, 2018 WL 558781, at *3 (E.D. Cal. Jan. 25, 2018) ("[P]laintiff fails to allege independently wrongful conduct, a necessary requirement to sustain its claim[] for . . . negligent interference with prospective economic advantage."); *Tyler v. PNC Bank, Nat. Ass'n*, No. C 10-3415 PJH, 2011 WL 1750798, at *2 (N.D. Cal. Apr. 22, 2011) (dismissing UCL claim "based upon purported fraudulent conduct of [the] defendant" where plaintiff failed to plead detrimental reliance with particularity).

BES asserts that based on the allegations of the FAC, it is clear that as of October 16, 2015, Pinnacle could not have had a reasonable expectation that it would be able to participate in the financing round except as a shareholder in the tender offer. According to BES, Pinnacle has not alleged any facts explaining why it did not immediately exercise its warrants during the four days between October 16, 2015 and the record date of October 20, 2015. In its order dismissing

9

1    the original complaint, the Court found that Pinnacle's alleged reliance of Mr. Toth's statements

2    was not plausible for the period between October 16, 2015 and October 20, 2015, because

3    Pinnacle had failed to explain why it did not exercise its warrants during that four-day period so

4    that it would be eligible to participate in the tender offer. *See* Order at 5, ECF 52. The Court

5    granted Pinnacle leave to amend to cure that deficiency. *See id.*

6          The Court concludes that Pinnacle has cured the prior pleading deficiency. The FAC

7    alleges as part of the bases for Claims 1-5 that HotChalk CFO John Toth represented "that

8    Pinnacle would be able to sell 'up to 100%' of its warrants to BES; the representation was

9    attributable to BES; Pinnacle relied on the representation and therefore did not pursue other

10   opportunities that might have been available with respect to its warrants; and as a result Pinnacle

11   lost the opportunity to participate in the 2015 transaction, because BES reneged on its promise to

12   purchase up to 100% of Pinnacle's warrants, and it limited participation in the prorated tender

13   offer to sellers who owned HotChalk shares (not warrants) as of October 20, 2015. FAC ¶¶ 31-36.

14   Pinnacle alleges that Mr. Toth stated on October 16, 2015 "that it would not be able to sell its

15   warrants (or the underlying shares) to BES *at all*." FAC ¶ 34. Pinnacle was still trying to find out

16   why BES had reneged, and to work out a solution, as of October 19, 2015. FAC ¶ 35. Pinnacle

17   had no idea that BES would set the record date – the date by which Pinnacle would have had to

18   exercise its warrants and acquire shares in order to participate in the tender offer – as the very next

19   day, October 20, 2015. FAC ¶ 36.

20         As noted, Pinnacle alleges that it relied on the promise that BES would buy up to 100% of

21   its warrants separately from the tender offer. Pinnacle therefore had no need to inquire what the

22   tender offer record date was until it was too late. Pinnacle perhaps could have inquired about the

23   record date on October 19, 2015, when Pinnacle was still trying to determine why its alleged

24   agreement to sell its warrants to BES had fallen through, or on October 20, 2019, and still had

25   time to exercise its warrants. However, it is not apparent from the face of the FAC or the record

26   which may be considered on a Rule 12(b)(6) motion that Pinnacle could have exercised its

27   warrants so quickly. Moreover, because Pinnacle alleges that Mr. Toth stated on October 16, 2015

28   that Pinnacle would not be able to sell its warrants *or the underlying shares* to BES *at all*, FAC ¶

10

34, it is unclear that Pinnacle would have had any basis to believe that it could sell in the tender offer even if it discovered the record date and exercised its warrants in time. Accordingly, the Court finds Pinnacle's allegations to be sufficient to plead reasonable and detrimental reliance on Mr. Toth's representations.

BES argues that Pinnacle has not pled any facts showing that BES had a duty to disclose the record date to Pinnacle. The Court agrees. However, for the reasons discussed above, the Court finds that Pinnacle has alleged facts sufficient to render its reliance on Mr. Toth's statements reasonable at least through the record date of October 20, 2015. Finally, BES argues that Pinnacle could not reasonably have relied on Mr. Toth's statements even before October 16, 2015, because the warrants themselves contained restrictions on sale that could not be orally modified. BES submits copies of the warrants, which may be considered by the Court because they are incorporated by reference into the complaint. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016). While the warrants do contain some restrictions on sale, for example that advance written notice be given to HotChalk, the warrants do not appear to preclude the type of direct sale to BES that Pinnacle alleges was promised by Mr. Toth. *See* Warrants ¶ 8(b), Moreno Decl. Exhs. A-C, ECF 66-3. BES does not point to any provision of the warrants that would have rendered Pinnacle's reliance on Mr. Toth's representations unreasonable.

In conclusion, the Court concludes that Pinnacle adequately and plausibly has alleged reasonable reliance on Mr. Toth's statements, to its detriment, in connection with the 2015 transaction. Accordingly, BES's motion to dismiss is DENIED.

## IV.  ORDER

(1)     BES's motion to dismiss is DENIED;

(2)     This order is filed conditionally under seal; and

(3)     The parties shall meet and confer regarding proposed redactions to the order before it is filed in the public docket, and shall submit agreed-upon proposed redactions to the Court on or before August 20, 2019.

Dated:  August 6, 2019

_____
BETH LABSON FREEMAN
United States District Judge

11