GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

COLIN B. DAVIS, SBN 273942
  cdavis@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

*Attorneys for Plaintiffs Pinnacle Ventures LLC, Pinnacle*
*Ventures Debt Fund III, L.P., and Pinnacle IV, L.P.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PINNACLE VENTURES LLC; PINNACLE VENTURES DEBT FUND III, L.P.; PINNACLE IV, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> BERTELSMANN EDUCATION SERVICES LLC, <br><br> Defendant. | CASE NO. 18-cv-03412-BLF <br><br> (Santa Clara County Superior Court Case No. 18CV329145) <br><br> Hon. Beth Labson Freeman <br><br> **PLAINTIFFS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE DEFENDANT'S COUNTERCLAIMS** <br><br> Action Filed:  June 5, 2018 <br> Removal Filed:  June 8, 2018 <br> Hearing Date:  February 6, 2020 <br> Hearing Time:  9:00 a.m. <br> Courtroom:  3 |

## ** REDACTED **
## CONFIDENTIAL VERSION SUBMITTED UNDER SEAL

## Lodged Pursuant to Local Rule 79-5(c)-(d)

## NOTICE OF MOTION AND MOTION

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  Please take notice that on February 6, 2020, at 9:00 a.m. in the United States District Court, Northern District of California, 280 South 1st Street, San Jose, CA 95113, in Courtroom 3, 5th Floor before the Honorable Beth Labson Freeman, Plaintiffs Pinnacle Ventures LLC, Pinnacle Ventures Debt Fund III, L.P., and Pinnacle IV, L.P. (collectively, "Pinnacle"), will and hereby do move the Court for an order striking and dismissing Defendant Bertelsmann Education Services LLC's ("BES") counterclaims pursuant to California Code of Civil Procedure § 425.16 and Federal Rule of Civil Procedure 12(b)(6). This Motion is based upon this Notice of Motion and Motion, California Code of Civil Procedure § 425.16, Federal Rule of Civil Procedure 12, the attached Memorandum of Points and Authorities, the papers on file in this case, the evidence incorporated by reference in BES's Answer to First Amended Complaint and Counterclaims, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES ............................................................................................. 1

I. Introduction............................................................................................................... 2

II. Background to Counterclaims ................................................................................. 3

III. Legal Standard ...................................................................................................... 5

IV. Argument .............................................................................................................. 6

    A.    BES's Claims Arise from Protected Activity.............................................. 6

    B.    BES Cannot State a Legally Viable Claim, Much Less Show a Probability of Success ........................................................................................................ 8

        1.    The Two-Sentence Unjust Enrichment Claim Fails On Multiple Grounds.................................................................................................... 8

        2.    The Tortious Interference Claims Must Be Dismissed Because There are No Facts Pled Demonstrating Wrongful Conduct or Economic Harm...................................................................................................... 10

        3.    The Unfair Competition Claim Should Be Dismissed................................... 13

V. Conclusion............................................................................................................. 14

Gibson, Dunn & Crutcher LLP

## TABLE OF AUTHORITIES

Page

**Cases**

*Am. Oil Serv. v. Hope Oil Co.*,
194 Cal. App. 2d 581 (Cal. Ct. App. 1961) ...............................................................10

*Aronson v. Kinsella*,
58 Cal. App. 4th 254 (Cal. Ct. App. 1997) ...............................................................2, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................5, 8, 12

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)...................................................................................5, 8

*Baral v. Schnitt*,
1 Cal. 5th 376, 384 (Cal. 2016)...............................................................................5, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................5

*Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (Cal. Ct. App. 2001) .............................................................9, 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (Cal. 1999)....................................................................................14

*Charles C. Chapman Bldg. Co. v. Cal. Mart*,
2 Cal. App. 3d 846 (Cal. Ct. App. 1969) ...............................................................12

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011)................................................................................5

*Cuviello v. Feld Entm't, Inc.*,
No. 13-CV-04951-BLF, 2015 WL 154197 (N.D. Cal. Jan. 12, 2015) ...........................6

*Damabeh v. 7-Eleven, Inc.*,
No. 5:12-CV-1739-LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ........................13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)..................................................................................4

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
11 Cal. 4th 376 (Cal. 1995)................................................................................3, 7, 11

*Echlin v. PeaceHealth*,
887 F.3d 967 (9th Cir. 2018)..................................................................................13

*Edwards v. Arthur Andersen LLP*,
44 Cal. 4th 937 (Cal. 2008)...................................................................................11

ii

Gibson, Dunn &
Crutcher LLP

*Edwards v. Centex Real Estate Corp.*,
    53 Cal. App. 4th 15 (Cal. Ct. App. 1997) ..............................................................6

*Falcon Stainless, Inc. v. Rino Cos.*,
    572 F. App'x 483 (9th Cir. 2014) ........................................................................13

*Feldman v. 1100 Park Lane Assocs.*,
    160 Cal. App. 4th 1467 (Cal. Ct. App. 2008) ........................................................7

*FIVE Hotel FZCO v. Viceroy Hotels, LLC*,
    No. B288793, 2019 WL 91567 (Cal. Ct. App. Jan. 3, 2019)....................................11

*Gerlinger v. Amazon.Com, Inc.*,
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ...................................................................8

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d. 898 (N.D. Cal. 2016) ..................................................................8

*Hirsch v. Bank of Am.*,
    107 Cal. App. 4th 708 (Cal. Ct. App. 2003) ..........................................................9

*I & U, Inc. v. Publishers Sols. Int'l*,
    652 F. App'x 558 (9th Cir. 2016) ..........................................................................7

*Iglesia Ni Cristo v. Cayabyab*,
    No. 18-CV-00561-BLF, 2018 WL 4674603 (N.D. Cal. Sept. 26, 2018)...................5

*Ivanhoe Partners v. Newmont Mining Corp.*,
    535 A.2d 1334 (Del. 1987) ....................................................................................9

*Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*,
    No. 14-CV-02864-JD, 2016 WL 4182402 (N.D. Cal. Aug. 8, 2016)......................12

*Kahn v. Lynch Commc'n Sys., Inc.*,
    638 A.2d 1110 (Del. 1994) ....................................................................................9

*Kasparian v. Cty. of Los Angeles*,
    38 Cal. App. 4th 242 (Cal. Ct. App. 1995) ..........................................................12

*Keller v. Fed. Ins. Co.*,
    No. CV 16-3946-GW(PJWx), 2017 WL 603181 (C.D. Cal. Feb. 13, 2017)...........12

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)................................................................................4

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003)..........................................................................11, 12

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011).................................................................................14

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (Cal. Ct. App. 1997) ...................................................................13

*Malin v. Singer*,
   217 Cal. App. 4th 1283 (Cal. Ct. App. 2013) ..................................................................7

*Marshall v. Packard-Bell Co.*,
   106 Cal. App. 2d 770 (Cal. Ct. App. 1951) ....................................................................9

*McDonald v. Coldwell Banker*,
   543 F.3d 498 (9th Cir. 2008)........................................................................................14

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001)..........................................................................................5

*Monaco v. Bear Stearns Cos.*,
   No. CV 09-05438 SJO, 2012 WL 10006987 (C.D. Cal. Dec. 10, 2012)........................10

*Nemcik v. Stevens*,
   No. 16-CV-00322-BLF, 2017 WL 2834120 (N.D. Cal. June 30, 2017) ....................6, 7

*Nestle USA, Inc. v. Crest Foods, Inc.*,
   No. LA CV16-07519 JAK(AFMx), 2019 WL 2619635 (C.D. Cal. Mar. 8, 2019) ........11

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999)..........................................................................................6

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (Cal. 1990)...........................................................................................11

*Park v. Bd. of Trs. of Cal. State Univ.*,
   2 Cal. 5th 1057 (Cal. 2017)............................................................................................7

*Park-Kim v. Daikin Applied Ams., Inc.*,
   747 F. App'x 639 (9th Cir. 2019) ................................................................................13

*Petrovich v. Ocwen Loan Servicing, LLC*,
   716 F. App'x 614 (9th Cir. 2017) ................................................................................13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018)......................................................................................5, 8

*Puri v. Khalsa*,
   674 F. App'x 679 (9th Cir. 2017) ................................................................................10

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
   11 Cal. App. 4th 1026 (Cal. Ct. App. 1992) .................................................................12

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
   157 Cal. App. 3d 1154 (Cal. Ct. App. 1984) ..................................................................8

Gibson, Dunn &
Crutcher LLP

*Rohde v. Wolf*,
    154 Cal. App. 4th 28 (Cal. Ct. App. 2007) ..........................................................................7

*Rubin v. Green*,
    4 Cal. 4th 1187 (Cal. 1993) ................................................................................................6

*Silberg v. Anderson*,
    50 Cal. 3d 205 (Cal. 1990) .................................................................................................7

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F.Supp. 1303 (N.D. Cal. 1997) ..................................................................................13

*Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*,
    122 Cal. App. 4th 1049 (2004) ............................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................4

*Tichinin v. City of Morgan Hill*,
    177 Cal. App. 4th 1049 (Cal Ct. App. 2009) ......................................................................6

*Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*,
    582 P.2d 1365 (Ore. 1978) ................................................................................................11

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    No. C 12-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013) ....................................11

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (Cal. Ct. App. 1996) .......................................................................12

## Statutes

Cal. Civ. Proc. Code § 47(b) ...........................................................................................................6

Cal. Civ. Proc. Code § 425.16 .........................................................................................................2

Cal. Civ. Proc. Code § 425.16(c)(1) ............................................................................................2, 6

## Other Authorities

Restatement (Third) of Restitution and Unjust Enrichment (2011) ..............................................10

Thomas R. Burke, *Anti-SLAPP Litigation* § 3:29 (Rutter Grp. 2019) .........................................6

## STATEMENT OF ISSUES

**I.** Whether Pinnacle's alleged statements that it would pursue litigation if its contractual rights were not honored are protected by California's litigation privilege.

**II.** Whether BES has stated a quasi-contract claim upon which relief can be granted for unjust enrichment despite (1) the existence of an express contract governing the payment at issue (2) Pinnacle's express contractual right to repayment; (3) BES's failure to allege unjust means through which Pinnacle obtained the payment at issue; (4) and BES's failure to allege actionable deprivation.

**III.** Whether BES has stated claims upon which relief can be granted for intentional and negligent interference with prospective economic advantage despite (1) BES's failure to allege interference that was neither protected by the litigation privilege nor in violation Pinnacle's contractual rights; (2) BES's failure to allege actual disruption of its economic relationship with HotChalk; (3) BES's failure to allege economic harm; and, for the negligent interference claim, (4) BES's failure to allege facts sufficient to show that Pinnacle owed BES any duty.

**IV.** Whether BES has stated a non-derivative claim upon which relief can be granted for unfair business practices in light of (1) BES's failure to plead a short and plain statement of facts supporting liability and (2) BES's failure to plead conduct violating legislatively recognized public policy.

Gibson, Dunn &
Crutcher LLP

# I. Introduction

In a transparent ploy to claw back leverage in a case squarely about its own misconduct, BES filed a bizarre and toothless counterclaim alleging that BES should be able to recover damages as a result of Pinnacle enforcing the plain terms of its loan agreements with HotChalk.  These agreements required HotChalk to repay Pinnacle's loan in full, plus specified premiums, if majority control of HotChalk's voting shares changed through "a transaction or series of transactions."  That is precisely what happened when BES increased its equity stake in Hotchalk to more than ██% in the Series A and AA transactions.  Pinnacle thus had the absolute right to repayment of its loans.  When BES refused to cause HotChalk to repay and demanded that Pinnacle instead extend the term of the loan, Pinnacle threatened to sue.  BES ultimately loaned HotChalk money so that it could repay the Pinnacle loan.  BES—not HotChalk—claims that it somehow deserves recourse for causing HotChalk to honor the terms of Pinnacle's loan agreements, and therefore manufactures tort claims against Pinnacle.  These claims are nonsensical, have no basis in law, and should be summarily dismissed with prejudice.

BES first runs headlong into California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, which prohibits claims based on protected speech.  BES's claims are rooted in Pinnacle's supposed "threat[s] to sue."  Answer ¶ 103.   It is hard to imagine claims more squarely barred under the statute, since "prelitigation demand[s] [are] precisely the type of statement that the litigation privilege is intended to protect."  *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 270 (Cal. Ct. App. 1997).  Because the claims have no merit, they must not only be dismissed, but BES must also pay Pinnacle's fees incurred in bringing this motion.  Cal. Civ. Proc. Code § 425.16(c)(1).

The counterclaims also are meritless as a matter of law.  Start with BES's lead claim for unjust enrichment—covering all of two conclusory sentences in the counterclaim.  Hornbook law precludes quasi-contract claims where, as here, a contract governs the payment at issue.  Nor can a third party like BES recover payments made from one contracting party to the other, particularly where the plain terms of the contract required HotChalk to repay the loan.  BES does not even explain how BES, rather than HotChalk, was injured.  Nor could it.  BES loaned money to HotChalk with the same interest rate (and change-of-control acceleration) as the Pinnacle agreements, and HotChalk is required to repay the

loan with interest.  If, as BES claims, Pinnacle "profited handsomely" from its loan agreements, Answer ¶ 1, then so too should BES.  There is no cognizable economic injury to BES alleged.

The other claims are similarly deficient.  BES asserts tortious or negligent interference claims based on Pinnacle's supposed threats of litigation and invocation of its contractual right to loan repayment.  But these claims fail at step one because conduct protected by statute and authorized by contract cannot be "independently wrongful." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 391 (Cal. 1995) (quotation marks omitted).  Nor does BES allege any actual disruption of its relationship with HotChalk, any economic harm, or even a duty owed by Pinnacle to BES.  And the one-sentence unfair competition claim is derivative, entirely conclusory, and subject to all the same flaws as the other claims.

BES's counterclaims are purely tactical, designed only to increase the costs to Pinnacle in litigating this case.  The counterclaims have absolutely no grounding under law, they never should have been filed, they should be dismissed with prejudice, and the Court should award Pinnacle its fees and costs, as required under California's anti-SLAPP statute.

## II.  Background to Counterclaims

Pinnacle filed this lawsuit seeking relief from BES, which had seized control of an education technology company called HotChalk and unlawfully deprived Pinnacle of the value of its warrants to purchase HotChalk shares.  *See* Order Denying Mot. to Dismiss FAC, ECF No. 79-3, at 1.   In September 2014 and May 2015, Pinnacle provided loans to HotChalk and obtained the warrants at issue in this case.  Answer ¶¶ 17, 23, 25.  To support HotChalk as the Company expanded, Pinnacle allowed HotChalk several times to restructure the loan agreements.  *Id.* ¶¶ 7, 43.

The loan agreements between HotChalk and Pinnacle contained provisions to protect Pinnacle's interests.  In particular, the loan agreements contained an acceleration clause that allowed Pinnacle to obtain full payment of the loans—including not only the unpaid balance of the principle but also unpaid interest, a specified final payment, and special premiums—if there was a change of majority control of

1    voting shares at HotChalk through a "transaction or series of related transactions." *See* Decl. of Brian

2    Lutz ("Lutz Decl."), Ex. A at § 1.02(e)(ii).[1]

3             In 2015, BES acquired an approximate ▮% of HotChalk's equity shares through the Series A

4    transaction.  Answer ¶ 39.  BES increased its interest in HotChalk to over ▮%—a clear majority

5    stake—through the 2018 Series AA transaction. *Id.* ¶¶ 49, 98.

6             BES's counterclaims arise out of Pinnacle exercising its contractual right to repayment under

7    the change of control provision in the loan agreements.  According to BES, HotChalk was "running

8    short on cash and needed to raise additional funds" in late 2017 while renegotiating a contract with

9    ▮▮▮▮▮▮▮▮▮.  Answer ¶¶ 94, 96.  This led BES to take two steps.  First, "Pinnacle was asked

10   to consent to the amendment of a subordination agreement to allow HotChalk to increase the amount

11   of its bridge loan." *Id.* ¶ 100.  Second, BES devised the Series AA transaction through which it would

12   increase its ownership interest in HotChalk to approximately ▮% of the Company's voting shares. *Id.*

13   ¶¶ 49, 98.  The Series AA transaction included a provision that diluted the interests of non-participating

14   stockholders on a ▮▮▮ basis. *Id.*  With respect to the bridge loans, BES alleges that Pinnacle

15   "unreasonably refused" to consent to amend a subordination agreement that would allow HotChalk to

16   take on more debt, and "refused to offer any alternatives that would ▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮." Answer ¶¶ 101-02.  BES does not say why Pinnacle's insistence that HotChalk comply

18   with its contractual obligations and  refusal to amend the agreements with HotChalk was unreasonable.

19   *See id.* ¶¶ 100-02.  Nor does BES claim that Pinnacle had any obligation to consent or offer alternatives,

20   let alone point to any facts demonstrating any such obligation on Pinnacle's part. *See id.*

21            With respect to the Series AA transaction, BES alleges that Pinnacle responded "by threatening

22   to sue HotChalk's board of directors for breach of fiduciary duty" and invoking the acceleration clause

23   in the loan agreements by "claim[ing] that the proposed Series AA Financing constituted a change of

---

[1]  The Court may consider documents referenced in the complaint and central to the claims presented, as long as the authenticity of the documents is not under dispute. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Lutz Decl. Exs. A and B—the loan agreements referred to in the counterclaim and which underlie BES's claims—are incorporated by reference as they are discussed in BES's Answer and Counterclaims and their authenticity is beyond dispute.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Gibson, Dunn &
Crutcher LLP

control." Answer ¶ 103.  The threat of litigation "had no grounds," BES says, because "fiduciary duties are not owed to warrant holders." *Id.* ¶ 104.  BES hypothesizes that disclosure of Pinnacle's "threat of litigation" would have impaired HotChalk's ability to finalize its contract with ███. *Id.*  BES, again, does not say why. *See id.*  And Pinnacle's position that there was a change of control at HotChalk when BES obtained a ██% interest in the Company was, according to BES, "false[]." *Id.* ¶ 103.  How BES can allege in good faith that its ██% interest did not constitute "control" of HotChalk is anyone's guess—particularly when BES also alleges that it "caused HotChalk to pay off Pinnacle's loan," *id.* ¶ 108—but that is the position BES has chosen to take in its counterclaim.  BES claims that Pinnacle's requests for repayment under the terms of its contract with HotChalk "forced" BES to loan additional funds to HotChalk, and that BES then "caused HotChalk to pay off Pinnacle's loan" with that money. *Id.*  Based on these allegations, BES asserts four state law tort claims against Pinnacle—unjust enrichment, intentional and negligent interference, and unfair competition.

### III. Legal Standard

A litigant may challenge the legal sufficiency of a claim by moving to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).  It can also "bring an anti-SLAPP motion with respect to California state law claims asserted under either diversity jurisdiction or supplemental jurisdiction." *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2018 WL 4674603, at *2 (N.D. Cal. Sept. 26, 2018).  Resolving an anti-SLAPP motion is a two-step process. *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (Cal. 2016).  First, the movant must show the challenged claims arise, at least in part, from activities protected by California Code of Civil Procedure § 425.16. *Id.*  The burden then shifts to the claimant, who must "demonstrate the merit of the claim[s] by establishing a probability of success" *Id.*  This inquiry overlaps with Federal Rule of Civil Procedure 12, as a cause of action must be dismissed under either standard if it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), or contains insufficient "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001).  If BES fails to

Gibson, Dunn & Crutcher LLP

1   meet this burden, the claims must be dismissed, and Pinnacle must be awarded its costs and fees under

2   the anti-SLAPP statute's mandatory fee-shifting provision.  Cal. Civ. Proc. Code § 425.16(c)(1); *see*

3   *also U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir. 1999)

4   (holding that the mandatory fee provision is applicable in federal cases); *Cuviello v. Feld Entm't, Inc.*,

5   No. 13-CV-04951-BLF, 2015 WL 154197, at *1, *5 (N.D. Cal. Jan. 12, 2015) (granting over $80,000

6   in fees and costs to prevailing parties in anti-SLAPP motion under the statute's "mandatory attorneys'

7   fees provision").

8   <center>**IV.   Argument**</center>

9   **A.      BES's Claims Arise from Protected Activity**

10          The California Code of Civil Procedure recognizes a litigation privilege, Cal. Civ. Proc. Code

11   § 47(b), that courts "have given . . . an expansive reach," protecting all communications with "some

12   relation" to contemplated or ongoing litigation.  *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (Cal. 1993)

13   (quotation marks omitted); *accord Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*, 122

14   Cal. App. 4th 1049, 1058 (2004).  This includes both "[o]ral statements and writings made before

15   official proceedings commence," Thomas R. Burke, *Anti-SLAPP Litigation* § 3:29 (Rutter Grp. 2019),

16   so long as "litigation is no longer a mere possibility, but has instead ripened into . . . [a] serious

17   consideration."  *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 39 (Cal. Ct. App. 1997);

18   *accord Nemcik v. Stevens*, No. 16-CV-00322-BLF, 2017 WL 2834120, at *4 (N.D. Cal. June 30, 2017).

19   This protection ensures potential litigants enjoy "the utmost freedom of access to the courts" free from

20   a "fear of being harassed . . . by derivative tort actions."  *Rubin*, 4 Cal. 4th at 1194 (quotation marks

21   omitted).

22          There can be no serious dispute that Pinnacle's alleged threat to sue is "precisely . . . type of

23   statement that the litigation privilege is intended to protect."  *Aronson v. Kinsella*, 58 Cal. App. 4th

24   254, 270 (1997).  This alleged threat to sue unless Pinnacle's contractual rights were honored

25   "notif[ied] the other party that litigation [was] imminent unless certain steps [were] taken" and

26   "represent[ed] the first step toward litigation."   *Id.* at 268, 270; *see also Tichinin v. City of Morgan*

27   *Hill*, 177 Cal. App. 4th 1049, 1069 (Cal Ct. App. 2009) (finding "prelitigation investigation" privileged

28   because it is a likely precursor to filing a lawsuit or "demand letters and threats to sue, which are

1    entitled to protection"); *Malin v. Singer*, 217 Cal. App. 4th 1283, 1288-1302 (Cal. Ct. App. 2013)

2    (granting anti-SLAPP motion to claims deriving from party's threat to sue for breach of fiduciary duty,

3    among other things); *Nemcik*, 2017 WL 2834120, at *3-4 (granting anti-SLAPP motion for causes of

4    action deriving from litigation-related conduct, including "unreasonable . . . requests" and "false

5    statements").

6           Courts have consistently protected statements far more opaque than Pinnacle's. Musings about

7    the merits of a potential lawsuit have been deemed privileged. *Feldman v. 1100 Park Lane Assocs.*,

8    160 Cal. App. 4th 1467, 1475-76, 1481 (Cal. Ct. App. 2008). So too was a voicemail accusing a party

9    of fraud and "threaten[ing] to take 'appropriate action.'" *Rohde v. Wolf*, 154 Cal. App. 4th 28, 32, 36-

10   37 (Cal. Ct. App. 2007). Even a letter that simply reserved "the [party's] legal rights" sufficed. *I & U,*

11   *Inc. v. Publishers Sols. Int'l*, 652 F. App'x 558, 559 (9th Cir. 2016).

12          Nor can BES defeat the privilege by impugning Pinnacle's motives and saying it "had no

13   grounds" for its threat because "fiduciary duties are not owed to warrant holders." Answer ¶ 104. The

14   privilege does not depend upon a party's "motives, morals, ethics or intent." *Silberg v. Anderson*, 50

15   Cal. 3d 205, 220 (Cal. 1990). And courts have rejected similar attempts to "simply . . . assert[] that

16   litigation to which the statement is related is without merit" since "such an interpretation would

17   virtually eradicate the litigation privilege." *Feldman*, 160 Cal. App. 4th at 1489.

18          BES's claims unquestionably arise out of Pinnacle's privileged threat to sue. The counterclaim

19   explicitly cites the "threats against HotChalk's Board" as one of the alleged acts undergirding its

20   tortious interference claims. Answer ¶¶ 115, 120. This alone is enough to trigger the litigation

21   privilege. *See Della Penna*, 11 Cal. 4th at 392-93 (holding "threats" cited as wrongful conduct, an

22   element of tortious interference claims, were sufficient to trigger protection under the anti-SLAPP

23   statute). Yet BES goes further: It also incorporates all of Pinnacle's allegedly "improper conduct"—

24   including the so-called "improper demands" about litigation—in its claim for unjust enrichment.

25   Answer ¶¶ 106, 112. Pinnacle's privileged actions therefore "*are* the challenged activities and the

26   bases" of BES's counterclaims. *Feldman*, 160 Cal. App. 4th at 1483 (emphasis in original); *see also*

27   *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1062-63 (Cal. 2017) ("A claim arises from

28   protected activity when that activity underlies or forms the basis for the claim," such as where the

1  "actions [pled] by the defendant supply" the "elements of the challenged claim" and "consequently

2  form the basis for liability"). Thus, BES's counterclaims fall squarely within, and are plainly barred

3  by, California's anti-SLAPP statute.

4  **B.      BES Cannot State a Legally Viable Claim, Much Less Show a Probability of Success**

5          Because BES's claims arise out of protected conduct, "the burden shifts to [BES] to

6  demonstrate that each challenged claim based on protected activity is legally sufficient and factually

7  substantiated." *Baral*, 1 Cal. 5th at 396. To escape dismissal under the anti-SLAPP statute—or Rule

8  12—BES must "defend[] the legal sufficiency of their pleading." *Planned Parenthood Fed'n of Am.,*

9  *Inc.*, 890 F.3d at 834. That requires BES to articulate both a cognizable legal theory undergirding each

10  of its claims, *Balistreri*, 901 F.2d at 699, and identify the well-plead "factual matter" that supports each

11  element of each claim. *Iqbal*, 556 U.S. at 678. BES can do neither, with each of its claims resting on

12  in-actionable legal theories and lacking even rudimentary factual allegations to support multiple,

13  required elements. This requires dismissal not only the anti-SLAPP statute, but Rule 12 as well.

14          **1.      The Two-Sentence Unjust Enrichment Claim Fails On Multiple Grounds**

15          BES complains that Pinnacle was unjustly enriched when it chose to exercise its contractual

16  right to repayment at a time when HotChalk was low on cash and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮. In other words, BES is complaining about Pinnacle's hard bargaining, and

18  with a third party at that. Equitable remedies are not available for contracts that are "merely the result

19  of '[h]ard bargaining.'" *See Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 906 (N.D. Cal. 2016),

20  *vacated in part on other grounds*, 897 F.3d 1109 (9th Cir. 2018); *Rich & Whillock, Inc. v. Ashton Dev.,*

21  *Inc.*, 157 Cal. App. 3d 1154, 1159 (Cal. Ct. App. 1984) ("Hard bargaining . . . [is] acceptable, even

22  desirable, in our economic system."). It is therefore no surprise that BES's lead claim for unjust

23  enrichment fails for multiple reasons.

24          The loan agreement between HotChalk and Pinnacle precludes any unjust enrichment claim as

25  a matter of law. Quasi-contract claims for unjust enrichment "cannot lie where a valid express contract

26  cover[s] the same subject matter . . . between the parties." *Gerlinger v. Amazon.Com, Inc.*, 311 F.

27  Supp. 2d 838, 856 (N.D. Cal. 2004); *accord Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 94

28  Cal. App. 4th 151, 172 (Cal. Ct. App. 2001). And courts have foreclosed any attempt by BES to

1  circumvent this rule by claiming it can somehow recover because it was not party to the loan

2  agreements. *See Cal. Med. Ass'n*, 94 Cal. App. 4th at 170-73 (finding that where there is an express

3  contract governing the rights at issue, even if one involved party is not a party to the contract, there

4  cannot be an implied contract claim).

5          BES's claim fails on its own terms too. To recover on an unjust enrichment theory, BES must

6  plead facts showing "receipt of a benefit and unjust retention of the benefit at the expense of another,"

7  *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 717 (Cal. Ct. App. 2003) (quotation marks and emphasis

8  omitted). But the only benefit BES identifies—early payment and prepayment penalties on HotChalk's

9  loans, Answer ¶ 111—were nothing more than the amount owed to Pinnacle under the terms of its

10 contracts with HotChalk. Lutz Decl., Ex. A at § 1.02(e)(ii). The unambiguous acceleration clause

11 allowed Pinnacle to demand full payment of the loans—including not only the unpaid balance of the

12 principal but also unpaid interest, a specified final payment, and special premiums—if there were a

13 change of control of HotChalk voting shares through a "transaction or series of related transactions."

14 Lutz Decl., Ex. A at § 1.02(e)(ii). There can be no serious dispute that BES, which went from owning

15 no HotChalk equity before the Series A to owning ██% of HotChalk's voting shares following the

16 Series AA, triggered the change of control provision. BES even admits that it held a ██% interest in

17 HotChalk as a result of these financings. Answer ¶ 49; *see Ivanhoe Partners v. Newmont Mining Corp.*,

18 535 A.2d 1334, 1344 (Del. 1987) (holding that a shareholder is controlling if it has more than 50% of

19 the voting power of a corporation); *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1114 (Del.

20 1994) (same). And any remaining doubt of BES's control is erased by its allegation that "BES caused

21 HotChalk to pay off Pinnacle's loan." *Id.* ¶ 108. Of course, BES could not force HotChalk to repay

22 the loan if BES did not control HotChalk.

23         Nor does BES allege any facts demonstrating that Pinnacle obtained any benefit through unjust

24 means. Pinnacle did nothing more than enforce its contractual right to repayment, and it is well

25 established that "it does not constitute duress or coercion to threaten to do that which a party has a legal

26 right to do." *Marshall v. Packard-Bell Co.*, 106 Cal. App. 2d 770, 774 (Cal. Ct. App. 1951) (no duress

27 when a party threatens to exercise a contractual right). The only "benefit" Pinnacle received was

28 repayment of what it was owed under the loan agreements.

1    Next, BES cannot recover because it has suffered no loss, and on the contrary, is now entitled

2    to the same interest payments from HotChalk that Pinnacle was entitled to receive under the terms of

3    its loan agreements with HotChalk.  Lutz Decl., Ex. A, at § 1.02.  BES's unjust enrichment claim seeks

4    to claw back to BES payments that HotChalk made to Pinnacle.  Answer ¶¶ 108, 111.  But unjust

5    enrichment claims for third-party payments can proceed only if the claimant has a superior claim to the

6    monies at issue.  Restatement (Third) of Restitution and Unjust Enrichment §§ 47-48 (2011).  BES

7    does not, and cannot, claim that BES, rather than Pinnacle, was entitled to the money HotChalk paid

8    to Pinnacle, and thus, BES cannot recover under an unjust enrichment theory based on payments BES

9    made to HotChalk pursuant to a separate loan agreement.  *See Cal. Med. Ass'n*, 94 Cal. App. 4th at 174

10   (rejecting unjust enrichment claim alleging another "received a benefit" from a third party "incidentally

11   to the performance of [the claimant's] own duty") (quotation marks omitted); *Puri v. Khalsa*, 674 F.

12   App'x 679, 684 (9th Cir. 2017) (affirming dismissal of unjust enrichment claim that failed to allege

13   claim for third-party payment under the "limited circumstances" identified by the Restatement).  As a

14   result, claims like the one here that Pinnacle "received a windfall," BES was "ill-treated," or that

15   HotChalk's "payment to [Pinnacle] . . . violate[d] rules of good faith, basic fairness, or common

16   decency, does not suffice to make out a claim in restitution."  Restatement (Third) of Restitution and

17   Unjust Enrichment § 48 cmt. i.

18   Finally, the voluntary payment doctrine forecloses any unjust enrichment claim as a matter of

19   law because BES paid HotChalk for the express purpose of satisfying Pinnacle's loans.  *See Monaco*

20   *v. Bear Stearns Cos.*, No. CV 09-05438 SJO (JCx), 2012 WL 10006987, at *9 (C.D. Cal. Dec. 10,

21   2012) ("[T]he voluntary payment doctrine . . . bars the recovery of money that was voluntarily paid

22   with full knowledge of the facts.") (quotation marks omitted); *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal.

23   App. 2d 581, 584 (Cal. Ct. App. 1961) (same).  The Court should see this claim for what it is and

24   dismiss it with prejudice.

25   **2.      The Tortious Interference Claims Must Be Dismissed Because There are No**

26   **Facts Pled Demonstrating Wrongful Conduct or Economic Harm**

27   BES's claims for intentional and negligent interference with prospective economic advantage

28   likewise fail.  To survive a motion to dismiss, BES must allege facts demonstrating (1) an economic

relationship between BES and HotChalk with the probability of future economic benefit; (2) Pinnacle's knowledge of the relationship; (3) wrongful intentional or negligent acts by Pinnacle designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to BES proximately caused by Pinnacle's acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003). The complaint fails to plead facts establishing these elements.

*First*, BES fails to plead that Pinnacle's "interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna*, 11 Cal. 4th at 392-93 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Ore. 1978)). This requires more than allegations of "improper motive"; the conduct must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159; *accord Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (Cal. 2008). Neither of the alleged acts— threatening litigation and refusing to increase the bridge loans—even come close.[2]

Start with the alleged "threat" of litigation. Those statements were protected by California's litigation privilege. *See supra* § IV.A. Obviously, BES cannot ground a tortious interference claim on protected conduct. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1132 (Cal. 1990); *see also*, *e.g.*, *Nestle USA, Inc. v. Crest Foods, Inc.*, No. LA CV16-07519 JAK(AFMx), 2019 WL 2619635, at *8 (C.D. Cal. Mar. 8, 2019) (rejecting tortious interference claims premised on protected conduct); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2013 WL 368365, at *13 (N.D. Cal. Jan. 29, 2013) (same); *FIVE Hotel FZCO v. Viceroy Hotels, LLC*, No. B288793, 2019 WL 91567, at *9 (Cal. Ct. App. Jan. 3, 2019) (unpublished) (same).

Pinnacle's refusal to amend its agreements with HotChalk to allow the Company to take on more debt is similarly not actionable. BES concedes that doing so required Pinnacle's "consent." Answer ¶ 100-01. And there is no allegation that Pinnacle had a contractual or otherwise "determinable" obligation to give such consent under any circumstances. *Korea Supply Co.*, 29 Cal. 4th at 1159; *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026,

---

[2] BES also lists as a supposedly wrongful act "Pinnacle's threats to scuttle HotChalk's ability to close its agreement with ███████." Answer ¶¶ 115, 120. But BES alleges no act that allegedly threatened "HotChalk's ability to finalize its contract with ███████" other than "the threat of litigation." *Id.* ¶ 104.

11

Gibson, Dunn &
Crutcher LLP

1032 (Cal. Ct. App. 1992) (rejecting a duty to "negotiate a modification" of a contract absent an "express contractual obligation" to do so). Again, BES cannot ground a tortious interference claim on Pinnacle's refusal to do what it was "at all times free to refuse to do." *Kasparian v. Cty. of Los Angeles*, 38 Cal. App. 4th 242, 266 (Cal. Ct. App. 1995); *see also, e.g., Keller v. Fed. Ins. Co.*, No. CV 16-3946-GW(PJWx), 2017 WL 603181, at *15 (C.D. Cal. Feb. 13, 2017) (rejecting tortious interference claim based on defendant's refusal to pay what it had no contractual duty to pay); *Charles C. Chapman Bldg. Co. v. Cal. Mart*, 2 Cal. App. 3d 846, 856 (Cal. Ct. App. 1969) ("If the means of interference involve no more than recognized trade practices . . . a plaintiff's loss . . . is not actionable.").

*Second*, there are no facts alleged showing that Pinnacle disrupted BES's relationship with HotChalk. The perfunctory allegation that Pinnacle "negatively affect[ed] BES and its investment in HotChalk," Answer ¶¶ 116, 121, obviously is not enough. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). BES does not claim that HotChalk was unable to renew its dealings with ███████ as a result of Pinnacle's conduct. Answer ¶¶ 96-109. And if anything, the Answer suggests BES's economic relationship with HotChalk strengthened during this time: BES loaned HotChalk *more* money, *id.* ¶ 108, and it entered into the Series AA transaction, which resulted in BES becoming HotChalk's majority shareholder. *Id.* ¶ 49.

*Third*, BES identifies no economic harm that it suffered—also "a necessary element of the tort." *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-CV-02864-JD, 2016 WL 4182402, at *5 (N.D. Cal. Aug. 8, 2016). The loans BES made to HotChalk as a result of Pinnacle's purported interference were pursuant to their own loan agreements. Answer ¶ 108-09. BES does not allege that HotChalk will not repay the loans. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 528-31 (Cal. Ct. App. 1996) (rejecting speculative theories of future loss). Nor is there any facts alleged (nor could there be) showing that BES's investment in HotChalk has suffered as a result of the repayment of Pinnacle's loans. *See Falcon Stainless, Inc. v. Rino Cos.*, 572 F. App'x 483, 487 (9th Cir. 2014) (affirming judgment because there was no evidence of diminution to plaintiff's business due to defendant's interference). In fact, BES agreed to lend HotChalk money at the same interest rate (and with a similar change-of-control provision) contained in the Pinnacle loan agreements with

HotChalk—agreements on which BES claims Pinnacle "profited handsomely." Answer ¶ 1; *compare also* Lutz. Decl. Ex. A at § 1.02(a) (Pinnacle Loan Agreement), *with* Ex. B at § 2(b)(a) (BES Loan Agreement).

BES's negligent interference claims fails for another independent reason.  Like any species of negligence, "[t]he tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 348 (Cal. Ct. App. 1997) (quotation marks and emphasis omitted).  But BES pleads no statutory, contractual, or other duty owed by Pinnacle to BES, nor does it allege facts sufficient to show that the "specific economic relationship between [Pinnacle] and third parties . . . could have economically benefitted [BES] but for [the allegedly] wrongful conduct." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1313 (N.D. Cal. 1997).  This is yet another ground for dismissal.  *See, e.g., Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *9 (N.D. Cal. May 8, 2013) (dismissing negligent interference claim for failure to plead duty with non-conclusory factual allegations).

### 3.     The Unfair Competition Claim Should Be Dismissed

BES's claim under California's Unfair Competition Law, Answer ¶¶ 122-24, fails for all the reasons above.  *See, e.g., Park-Kim v. Daikin Applied Ams., Inc.*, 747 F. App'x 639, 640 (9th Cir. 2019) (affirming dismissal of UCL claim when other causes of action are properly dismissed); *Petrovich v. Ocwen Loan Servicing, LLC*, 716 F. App'x 614, 618 (9th Cir. 2017) (same).   Indeed, the lone conclusory sentence describing the claim, Answer ¶ 123, does not provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Echlin v. PeaceHealth*, 887 F.3d 967, 977 (9th Cir. 2018) (quotation marks omitted).

In any event, none of BES's allegations could support such a claim.  BES must allege a practice by Pinnacle that "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008).  The conduct BES appears to point to—Pinnacle's alleged unsuccessful request for a premium on its loan, a warrant for preferred stock, and guarantee by BES of Pinnacle's existing loans to HotChalk—obviously is insufficient.  Answer ¶ 123.  Not only were these requests rejected, but BES identifies no "legislatively declared policy" violated by Pinnacle's failed request, much less

1    an "impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th

2    163, 186-87 (Cal. 1999).  Nor does BES identify "loss or deprivation of money or property sufficient

3    to qualify as injury in fact," *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011), since

4    BES neither acceded to Pinnacle's requests, Answer ¶¶ 105, 123-24, nor alleges any opportunity cost

5    associated with BES's subsequent loans to HotChalk, *id.* ¶ 109.

6          BES's theory of liability is not even internally consistent.  BES claims Pinnacle is liable for

7    requesting "additional consideration" from HotChalk and BES.  Answer ¶ 123.  But then BES goes on

8    to claim that Pinnacle's refusal to agree to *HotChalk's* extra-contractual requests was also tortious.  *See*

9    *id.* ¶¶ 100-01.   Contractual counterparties cannot be liable to each other every time one asks for

10   "additional consideration," *id.* ¶ 123, especially when those requests are turned down.

## V.  Conclusion

12          For the reasons set forth above, the Court should strike and dismiss with prejudice BES's

13   counterclaims and order BES to pay Pinnacle's fees and costs incurred in connection with moving to

14   dismiss BES's counterclaims, as required under the mandatory fee-shifting provision of California's

15   anti-SLAPP statute.

16

17   Dated: October 10, 2019

18                                              GIBSON, DUNN & CRUTCHER LLP

19

20                                              By:  /s/ Brian M. Lutz_____
                                                    Brian M. Lutz
21

22                                              *Attorneys for Plaintiffs Pinnacle Ventures LLC, Pinnacle*
                                                *Ventures Debt Fund III, L.P., and Pinnacle IV, L.P.*

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP