UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PINNACLE VENTURES LLC; PINNACLE VENTURES DEBT FUND III, L.P.; and PINNACLE IV, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> BERTELSMANN EDUCATION SERVICES LLC, <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 18-cv-03412-BLF <br><br> **ORDER DEFERRING RULING ON PINNACLE'S ANTI-SLAPP MOTION; AND GRANTING PINNACLE'S MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> [Re: ECF 87] <br><br> [CONDITIONALLY UNDER SEAL] |

This action arises from competing assertions of wrongdoing by investors in third party HotChalk, Inc. ("HotChalk"), a privately held corporation that provides education technology and services. Pinnacle Ventures LLC, Pinnacle Ventures Debt Fund III, L.P., and Pinnacle IV, L.P. (collectively, "Pinnacle") provided debt financing to HotChalk in 2014 and 2015. Bertelsmann Education Services LLC ("BES") provided additional financing in 2015 and 2018. Pinnacle claims that BES used fraudulent and unlawful means to lower the value of Pinnacle's investment, and BES claims that Pinnacle used extortionate threats to extract benefits from HotChalk to which it was not entitled. The operative pleadings are Pinnacle's first amended complaint ("FAC") and BES's answer and counterclaims.

Before the Court are Pinnacle's Special Motion to Strike BES's counterclaims under California Code of Civil Procedure § 425.16 ("anti-SLAPP motion") and Pinnacle's Motion to Dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, a ruling on the anti-SLAPP motion is DEFERRED and the motion to dismiss is GRANTED WITH LEAVE TO AMEND.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. BACKGROUND

Pinnacle and HotChalk entered into loan agreements in 2014 and 2015 that extended debt financing of approximately $█████ to HotChalk.  FAC ¶¶ 23, 25, 27, ECF 59-4; Answer ¶ 2, ECF 83-4.  As part of the transactions, Pinnacle obtained warrants giving it the right to purchase HotChalk shares.  FAC ¶¶ 24, 26; Answer ¶ 2.

In a 2015 transaction ("2015 Transaction"), BES made a substantial equity investment in HotChalk and purchased a large number of shares from existing HotChalk shareholders, after which BES owned approximately █████ of HotChalk's shares.  FAC ¶ 29; Answer ¶¶ 3-6.  Pinnacle wanted to participate in the 2015 Transaction, but BES's offer to purchase applied only to shares owned as of October 20, 2015.  Pinnacle claims that it was not informed of the record date in time to exercise its warrants.  FAC ¶¶ 34-36.  BES claims that Pinnacle had time to exercise its warrants and participate in the 2015 Transaction.  Answer ¶ 36.

In a 2018 transaction ("Series AA Financing"), BES made a further equity investment in HotChalk, after which BES owned more than █% of HotChalk's shares.  FAC ¶ 49; Answer ¶¶ 9, 49.  In connection with the Series AA Financing, the shares of non-participating stockholders and warrant holders were split on a █████ basis, meaning that one share of HotChalk became █████ of a share.  FAC ¶ 50; Answer ¶¶ 11, 50.  Pinnacle did not participate in the Series AA Financing, and its warrants therefore were converted on a █████ basis, substantially diluting Pinnacle's stake in HotChalk.  FAC ¶ 50; Answer ¶¶ 11, 50.

The parties take very different views of the events described above.  Pinnacle claims that "Pinnacle's investment in HotChalk has been stolen and Pinnacle's rights trampled by a controlling stockholder looking out only for its own interests."  FAC ¶ 14.  Pinnacle's operative FAC asserts claims against BES for:  (1) fraud; (2) negligent misrepresentation; (3) intentional interference with prospective economic advantage; (4) negligent interference with prospective economic advantage; (5) unfair business practices in violation of California Business & Professions Code § 17200 et seq.; and (6) unjust enrichment. FAC, ECF 60.

BES claims that it has always supported HotChalk, and that Pinnacle "commenced a series of unwarranted and improper demands █████████████████████████████████ in

order to secure additional benefits for itself." Counterclaims ¶ 99. Specifically, BES alleges that when it met with Pinnacle in January 2018 to discuss HotChalk's financial situation, "Pinnacle responded by threatening to sue HotChalk's board of directors for breach of fiduciary duty." Counterclaims ¶ 103. Pinnacle allegedly knew that the threat of litigation "would be devastating to HotChalk's ability to finalize its contract with ▮▮▮▮▮▮," HotChalk's biggest customer, "since any such litigation would have to be disclosed." Counterclaims ¶¶ 96, 104. Pinnacle allegedly used the threat of litigation to demand benefits to which it was not entitled, including early repayment of HotChalk's entire loan amount. Counterclaims ¶¶ 103-05. BES claims that it was forced to lend HotChalk nearly $▮▮▮▮▮▮ in additional financing to pay off Pinnacle. Counterclaims ¶¶ 105, 108-09. BES filed an answer and counterclaims on September 19, 2019, asserting claims against Pinnacle for: (1) unjust enrichment; (2) intentional interference with prospective economic advantage; (3) negligent interference with prospective economic advantage; and (4) unlawful and unfair business practices in violation of California Business & Professions Code §§ 17200 *et seq*.

## II.     ANTI-SLAPP MOTION

### A.     Legal Standard

"Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity." *Barry v. State Bar of California*, 2 Cal. 5th 318, 320 (2017). "Unless the plaintiff establishes a probability of prevailing on the claim, the court must grant the motion and ordinarily must also award the defendant its attorney's fees and costs." *Id*.

"The analysis of an anti-SLAPP motion proceeds in two steps." *Barry*, 2 Cal. 5th at 321. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." *Id*. Only "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute" is the second step reached. *Id*.

3

1    At step two, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. Where, as here, the anti-SLAPP motion challenges only the legal sufficiency of the claims, the district court applies the Rule 12(b)(6) standard to consider whether a claim is stated. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). If the challenged claims are not adequately stated in the initial pleading, the district court may defer consideration of the anti-SLAPP motion pending the filing of an amended pleading. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091-92 (9th Cir. 2004) (holding that district court did not err in deferring consideration of Covad's anti-SLAPP motion pending receipt of Verizon's first amended complaint, and affirming denial of anti-SLAPP motion to strike first amended complaint).

**B.     Discussion**

Pinnacle has filed an anti-SLAPP motion directed to BES's counterclaims. At the first step of the analysis, the Court finds that Pinnacle has made a threshold showing that the counterclaims are based in part on allegations of protected activity, specifically, Pinnacle's alleged threat to sue HotChalk's board of directors. *See* Counterclaims ¶¶ 103, 104, 115, 120. Communications in connection with anticipated litigation are protected activity under the anti-SLAPP statute. *See Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1263 (2008). "[M]any anti-SLAPP cases involving prelitigation communications concern demand letters or other statements to adverse parties or potential adverse parties." *Id.* Moreover, the anti-SLAPP statute "has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made in connection with pending or anticipated litigation." *Id.* (internal quotation marks omitted). Informal "pre-litigation demands and threats to sue, even if made using rude language, are protected activity within the meaning of the anti-SLAPP statute." *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, No. SACV 09-01148-CJC (MLGx), 2010 WL 11518555, at *2 (C.D. Cal. Nov. 10, 2010). In *Fiji Water*, the protected activity requirement was met by verbal threats to a distributor at a convention to the effect that the distributer would be "financially crippled" by litigation if he did not stop distributing an allegedly infringing product. *See id.*

4

BES relies on *Park v. Bd. of Trustees of California State Univ.* in arguing that the anti-SLAPP motion should be denied because Pinnacle's litigation threat is not itself the wrong complained of, but merely evidence of Pinnacle's efforts to exploit HotChalk's precarious financial position to extract benefits to which it was not entitled. In *Park*, the California Supreme Court held that: "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1060 (2017).

BES's reliance on *Park* is misplaced. The allegations regarding Pinnacle's litigation threat are not merely evidence of Pinnacle's alleged wrongful conduct but rather are incorporated into and central to each of BES's counterclaims. The threat of litigation that would have to be disclosed to ▮▮▮▮▮ is the means by which Pinnacle allegedly compelled BES to lend HotChalk an additional $▮▮▮▮▮ to pay off Pinnacle's loan. *See* Counterclaims ¶¶ 104, 108-09. BES's additional loan, and the use of those loan monies to pay off Pinnacle, form the basis for BES's first counterclaim for unjust enrichment. *See* Counterclaims ¶ 111 ("Because of Pinnacle's improper conduct, BES was forced to confer an undue benefit on Pinnacle (*i.e.*, the early payment of its loan, including pre-payment penalties)."). "Pinnacle's improper threats against HotChalk's Board" are specifically alleged to be "independently wrongful, intentional acts" underpinning BES's second counterclaim for intentional interference with prospective economic advantage and third counterclaim for negligent interference with prospective economic advantage. *See* Counterclaims ¶¶ 115, 120. Pinnacle's "unlawful and unfair business practices," including the threat of litigation, form the basis for BES's fourth counterclaim under California Business and Professions Code § 17200. *See* Counterclaims ¶¶ 104, 122-24.

At most, BES's argument that its counterclaims are based on conduct other than Pinnacle's threat of litigation establishes that its counterclaims are "mixed." When evaluating "mixed" claims, the Court must disregard allegations based on unprotected activity and proceed to step two

of the analysis with respect to allegations based on protected activity. *See Baral*, 1 Cal. 5th at 396. At step two, the burden shifts to BES to demonstrate that each of its counterclaims based on protected activity "is legally sufficient and factually substantiated." *Id.* Pinnacle's motion challenges the legal sufficiency of BES's counterclaims. Accordingly, the Court applies the Rule 12(b)(6) standard in its step two determination whether BES has demonstrated that its counterclaims are legally sufficient. *See Planned Parenthood*, 890 F.3d at 833-34.

For the reasons discussed below in connection with Pinnacle's motion to dismiss pursuant to Rule 12(b)(6), BES has failed to state a claim upon which relief may be granted. Accordingly, BES has not met its burden at step two of the anti-SLAPP analysis. Before making a final determination on Pinnacle's anti-SLAPP motion, however, the Court will grant BES leave to amend its counterclaims to either eliminate its allegations of protected activity or allege claims based on protected activity with more specificity. *See Verizon*, 377 F.3d at 1091. At the hearing, Pinnacle's counsel argued that the Court should not defer ruling on the anti-SLAPP motion, citing *Planned Parenthood* and *Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020), in support of its position that the Court should grant the anti-SLAPP motion and then grant BES leave to amend if warranted. The Court has reviewed *Planned Parenthood* and *Todd*. Neither decision calls into question the Court's discretion to defer ruling on an anti-SLAPP motion under *Verizon*, and the Court finds it appropriate to exercise its discretion in this case.

### III. MOTION TO DISMISS

#### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### B. Discussion

As discussed above, BES's allegations regarding Pinnacle's threat of litigation are central

to all of the counterclaims. However, as argued by Pinnacle, those allegations appear to fall squarely within California's Litigation Privilege, California Civil Code § 47(b). "The litigation privilege grants absolute immunity from tort liability for communications made in relation to judicial proceedings." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (internal quotation marks and citation omitted). "[C]ommunications with 'some relation' to an *anticipated* lawsuit" fall within the privilege. *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993). As presently framed, all of BES's counterclaims are subject to dismissal as barred by § 47(b).

The counterclaims also are subject to dismissal for failure to plead the required elements.

### i. First Counterclaim for Unjust Enrichment

"The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (internal quotation marks, citation, and alteration omitted). BES alleges that Pinnacle received a benefit to which it was not entitled, namely, the early repayment of its loan, including prepayment penalties. *See* Counterclaims ¶¶ 111-12. However, it is clear from the pleading that *HotChalk* repaid Pinnacle's loan. BES has not alleged facts showing that HotChalk's repayment of an existing debt was at the expense of BES. While BES chose to lend HotChalk the funds that HotChalk subsequently used to pay off its loan to Pinnacle, BES is entitled to repayment of its loan from HotChalk. BES has cited no cases, and the Court has discovered none, that would entitle BES to pursue a claim of unjust enrichment on these facts.

Pinnacle's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the first counterclaim for unjust enrichment.

### ii. Second Counterclaim for Intentional Interference with Prospective Economic Advantage and Third Counterclaim for Negligent Interference with Prospective Economic Advantage

"The elements of interference with prospective economic advantage (though differing on the mental state required for intentional or negligent interference) are: (1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference

itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff." *Kacher Firestopping, Inc. v. Local No. 5, Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, No. SACV 08-00610-CJC(ANx), 2008 WL 11337452, at *4 (C.D. Cal. June 30, 2008) (internal quotation marks and citation omitted).

BES identifies the following as independently wrongful acts: "Pinnacle's unreasonable refusal to consent to the increase in HotChalk's bridge loans, Pinnacle's improper threats against HotChalk's Board, and Pinnacle's threats to scuttle HotChalk's ability to close its agreement with ▇▇▇▇▇▇." Counterclaims ¶¶ 115, 120. BES has not alleged any facts showing that Pinnacle was legally obligated to consent to an increase in HotChalk's bridge loans. Pinnacle's threat of suit against the HotChalk board is protected by California's Litigation Privilege, as discussed above, and Pinnacle's threats to scuttle the ▇▇▇▇▇▇ deal are grounded in the threat of litigation. Accordingly, BES's allegations are inadequate to show an independently wrongful act on the part of Pinnacle. Moreover, BES has not alleged facts showing a disruption in its relationship with HotChalk. Based on the face of the counterclaims, it appears that BES controls HotChalk and provides it with financial support.

Pinnacle's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the second counterclaim for intentional interference with prospective economic advantage and the third counterclaim for negligent interference with prospective economic advantage.

### iii. Fourth Counterclaim under Cal. Bus. & Prof. Code § 17200

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. BES alleges that "Pinnacle's unlawful and unfair practices, including Pinnacle's improper demands for additional consideration, constitute a violation of California Business and Professions Code §§ 17200 *et seq*." Counterclaims ¶ 123. BES has not pled facts showing a violation of law by Pinnacle. With respect to BES's allegation that Pinnacle's demands for additional consideration were "unfair" within the meaning of the UCL, BES has not alleged facts showing why Pinnacle's demand for repayment of its loan to HotChalk was unfair. Moreover, BES has not allege facts showing that it

has standing to assert a UCL claim based on Pinnacle's repayment demand. To establish standing under the UCL, a plaintiff must establish that it suffered direct injury and lost money or property as a result of the alleged unfair competition. *See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 325 (2011). It appears on the face of the counterclaims that *HotChalk* repaid a debt it owed to Pinnacle. While BES chose to lend HotChalk the funds that HotChalk subsequently used to pay off Pinnacle, BES is entitled to repayment of its loan to HotChalk and therefore BES has not established that it lost any money or property.

Pinnacle's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the fourth counterclaim under California's UCL.

**IV. ORDER**

(1) A ruling on Pinnacle's anti-SLAPP motion is DEFERRED pending amendment of the counterclaims to provide BES with the opportunity to either eliminate its allegations of protected activity or allege counterclaims based on protected activity with adequate specificity. The anti-SLAPP motion is TERMINATED WITHOUT PREJUDICE to renewal, if appropriate, after the filing of BES's amended counterclaims (if any).

(2) Pinnacle's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to all counterclaims;

(3) Any amended counterclaims shall be filed on or before March 3, 2020. Leave to amend is limited to the deficiencies identified in this order. BES may not add new counterclaims or parties without obtaining prior leave of the Court.

(4) This order terminates ECF 87.

Dated: February 11, 2020

BETH LABSON FREEMAN
United States District Judge

9